176 F.3d 658
 SOUTH TRENTON RESIDENTS AGAINST 29; Theresa Fitzgibbon;
New Jersey Public Interest Research Group Citizen Lobby;
Environmental Defense Fund; New Jersey Environmental Lobby;
The Association of New Jersey Environmental Commissions
(ANJEC); The Delaware River Keeper; New Jersey
Environmental Federation; Tri State Transportation Campaign,
v.
FEDERAL HIGHWAY ADMINISTRATION; Russell Eckloff, Division
Administrator United States Department of Transportation
Federal Highway Administration; John J. Haley, Commissioner
New Jersey Department of Transportation; Gloria Jeff,
Acting Administrator, United States Department of
Transportation, Federal Highway Administration; United
States Department of Transportation; Rodney Slater,
Secretary, United States Department of Transportation;
Delaware Valley Regional Planning Commission; John J.
Coscia, Executive Director, Delaware Valley Regional
Planning Commission,
South Trenton Residents Against 29; Theresa Fitzgibbon;
New Jersey Public Interest Research Group Citizen Lobby;
The Delaware Riverkeeper; The Association of New Jersey
Environmental Commissions; New Jersey Environmental Lobby;
New Jersey Environmental Federation; Tri State
Transportation Campaign, Appellants.
 No. 98-5226.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 7, 1998.
Filed May 5, 1999.
 
 Edward Lloyd, Ann Alexander (Argued), Rutgers University School of Law, Environmental Law Clinic, Newark, NJ, for Appellants.
 Susan C. Cassell (Argued), Office of United States Attorney, Newark, NJ, Arlene R. Weiss (Argued), Office of Attorney General of New Jersey, Trenton, NJ, for Appellees.
 Before: STAPLETON, NYGAARD, Circuit Judges, and GOLDBERG,* Judge.
 OPINION OF THE COURT
 NYGAARD, Circuit Judge.
 
 
 1
 Residents of South Trenton, New Jersey, who live near, use and enjoy the last remaining portion of the Delaware River waterfront in South Trenton, and various environmental groups sought declaratory relief and a permanent injunction against the Route 29 Riverfront Spur project. They contend that the federal and state agencies violated the National Environmental Policy Act (NEPA) because town meetings and community outreach programs which preceded the 1997 Decision Document are not an adequate substitute for a Supplemental Environmental Impact Statement. They also assert that a Congestion Management Study and Major Investment Study of the Route 29 Riverfront Spur are required under the Intermodal Surface Transportation Efficiency Act (ISTEA). The District Court granted summary judgment in favor of the Federal Highway Administration and the State of New Jersey, concluding (1) that the Federal Highway Administration took a "hard look" at the changed circumstances and made a reasoned decision that a Supplemental Environmental Impact Statement was not required based on " 'its evaluation of the significance--or lack of significance--of the new information' " and (2) that the Route 29 Riverfront Spur project fell within the grandfather provision of the ISTEA. Dist. Ct. Mem. Op. at 9-10 (quoting Marsh v. Oregon Natural Resources Council, 490 U.S. 360, 375, 109 S.Ct. 1851, 1861, 104 L.Ed.2d 377 (1989)).
 
 
 2
 The South Trenton residents now appeal. We have jurisdiction under 28 U.S.C. § 1291. We will affirm.
 
 I.
 
 3
 In 1976, the New Jersey Department of Transportation proposed to construct the "Trenton Complex," a roadway system that would connect Interstates I-195, I-295, and Route 29 in the marshlands of South Trenton. A draft Environmental Impact Statement was completed and circulated. The Federal Highway Administration approved a Final Environmental Impact Statement on January 19, 1981, which selected a six lane highway as the preferred alternative for the Route 29 Riverfront Spur, a section of the highway running along the South Trenton waterfront.
 
 
 4
 Construction on the Trenton Complex began in 1981 and continued through 1995 or 1996. Partly in response to vociferous resistance from South Trenton residents, the Governor of New Jersey agreed to list construction of the Riverfront Spur portion as "very last priority." Appellants' App. at 413. Additionally, the New Jersey Department of Transportation agreed to reevaluate the need for the Riverfront Spur after the rest of the Trenton Complex was complete and operational. See id. at 414-16.
 
 
 5
 When the project began, the area allocated for the Riverfront Spur was largely industrial. Over the past eighteen years, however, the area has undergone substantial development including the construction of "Waterfront Park," a 6300 seat minor league baseball stadium; the "Katmandu," a restaurant/nightclub with a 2000 patron capacity; the "Water's Edge Convalescent Center;" an office building complex; and a parking lot that accommodates approximately 2000 vehicles. South Trenton residents continue to use the remaining waterfront for walking, bicycling, fishing and swimming.
 
 
 6
 In December 1995, the Trenton Complex, absent the Riverfront Spur, opened to traffic. Almost immediately, traffic congestion began on local roads near the South Trenton waterfront and truck traffic became very heavy. The New Jersey Department of Transportation conducted a Traffic Study of the area and published its findings in December 1996. Responding to concerns raised by residents of South Trenton, a community involvement program began in early 1996 and continued into the preliminary design stage of the proposed Riverfront Spur. In March 1997, the New Jersey Department of Transportation issued a Final Alternatives Analysis for the Riverfront Spur. The Final Alternatives Analysis acknowledged the development of the Trenton Riverfront and the increased traffic along local streets, stating that "[e]xisting conditions along Lamberton Road are currently unsafe for motorists and residents," and evaluated twelve alternative designs, seven of which were four-lane roadways. Appellants' App. at 170-71.
 
 
 7
 The Final Alternatives Analysis recommended a four-lane highway/boulevard with a depressed cut and cover section. This design would provide South Trenton residents with an alternate recreation area and waterfront vista, but would deny access to the last remaining portion of the South Trenton waterfront. Satisfied that the Riverfront Spur would alleviate traffic congestion while providing an aesthetically pleasing waterfront vista, the Trenton City Council unanimously adopted a resolution approving the project. Similarly, the Mercer County Board of Chosen Freeholders unanimously supported Route 29 Project.
 
 
 8
 Recognizing the lapse of time since the Final Environmental Impact Statement was approved, the New Jersey Department of Transportation conducted an Environmental Reevaluation in accordance with the National Environmental Policy Act (NEPA). See 23 C.F.R. § 771.129.[1] The purpose of the Reevaluation was to determine whether the Final Environmental Impact Statement prepared in 1980 remained valid, or whether a Supplemental Environmental Impact Statement was necessary. Several surveys and studies were conducted and some of the information contained in the Final Alternatives Analysis completed one month earlier was incorporated into the Environmental Reevaluation. Where appropriate, the Environmental Reevaluation analyzed both the impact to the environment as well as the proposed mitigation. The studies and corresponding findings were:
 
 
 9
 (1) an updated air quality assessment that indicated the project would have no impact on local air quality and that the project would comply with conformity requirements of the Clean Air Act of 1990; appellants' app. at 96;
 
 
 10
 (2) a hazardous waste screening that revealed heavy metals above New Jersey Department of Environmental Protection's Residential Soil Clean up criteria; however, the agency determined that "the majority of the soil excavated in the project area would be non-hazardous;" id. at 121-23;
 
 
 11
 (3) a historic architectural survey that concluded the project would "have no adverse effect on historic architectural properties identified within the Area of Potential Effect;" id. at 125;
 
 
 12
 (4) an archeological survey that found the proposed action would have "no adverse effect to prehistoric and historic archeological resources through a Data Recovery program;" id. at 128;
 
 
 13
 (5) a traffic study which revealed that approximately 24,840 vehicles travel the Route 29/Lamberton Road Segment and approximately 28,940 vehicles travel the Route 29 four-lane cross-section of Cass Street daily; id. at 160;
 
 
 14
 (6) "the removal and disturbance of vegetated areas along the Delaware River and permanent filling of 0.36 hectares (.89 acres) of shallow water habitat, would be replaced at a 2:1 ratio elsewhere along the Delaware River. This represents only half of the area proposed to be filled for the previously proposed six-lane alternative." In contrast, "[t]he 1981 EIS proposed 1.13 hectares (2.8 acres) of fill in the Delaware River;" id. at 136;
 
 
 15
 (7) approximately 0.32 hectares (0.78 acres) of 100-year floodplain will be impacted by the project; id. at 107, 136.
 
 
 16
 In sum, the Reevaluation concluded that the environmental impacts of the proposed four-lane alternative were "substantially less than those impacts identified in the 1981 [Final Environmental Impact Statement] for the previously proposed six-lane alternative." Id. at 136.
 
 
 17
 Based on the Environmental Reevaluation submitted by the New Jersey Department of Transportation, the Federal Highway Administration determined that a Supplemental Environmental Impact Statement was not required, because the Environmental Reevaluation "did not identify significant new adverse impacts as a result of the proposed action," and published a Decision Document on April 24, 1997. Appellants' App. at 98. The Federal Highway Administration also concluded that the project is exempt from ISTEA's requirements for a Major Investment Study and Congestion Management Study.
 
 II.
 
 18
 We exercise plenary review when reviewing a district court's grant or denial of summary judgment, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986); UPS Worldwide Forwarding, Inc. v. United States Postal Serv., 66 F.3d 621, 624 (3d Cir.1995), giving considerable deference to an agency's interpretation of its own rules and regulations unless that interpretation is "plainly erroneous or inconsistent with the regulation." See Barnes v. Cohen, 749 F.2d 1009, 1018 (3d Cir.1984) (quoting Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)). In other words, we are not "empowered to substitute [our] judgment for that of the agency." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 414-16, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971). Rather, our role is limited to determining whether the Federal Highway Administration "considered relevant factors and articulated a rational connection between the facts found and the choice made." Baltimore Gas & Elec. Co. v. Natural Resources Defense Council, Inc., 462 U.S. 87, 105, 103 S.Ct. 2246, 2256, 76 L.Ed.2d 437 (1983).
 
 
 19
 Our standard of review concerning the agency's decision not to draft a Supplemental Environmental Impact Statement is less settled. See Township of Springfield v. Lewis, 702 F.2d 426, 436 (3d Cir.1983) ("[W]e have not prescribed the standard to apply in reviewing a decision not to revise and recirculate an EIS already prepared."). Generally, however, we have "assume[d], without deciding, that an agency's determination not to revise an Environmental Impact Statement must be 'reasonable under the circumstances' when viewed 'in the light of the mandatory requirements and high standards set by NEPA.' " Township of Lower Alloways Creek v. Public Serv. Elec. & Gas Co., 687 F.2d 732, 742 (3d Cir.1982) (quotations and citations omitted). We see no reason to deviate from that approach here.[2]
 
 
 20
 A. The Agency's Decision that a Supplemental Environmental
 
 Impact Statement was Unnecessary
 
 21
 The Supreme Court has set forth a three-part test to guide our review of an agency's decision that a Supplemental Environmental Impact Statement is unnecessary: (1) whether any major federal action remains to occur; (2) whether any substantial changes have occurred or new information has come to light; and (3) whether these changes were significant enough to require preparation of a Supplemental Environmental Impact Statement despite the defendant agency's conclusion to the contrary. See Marsh, 490 U.S. at 374, 109 S.Ct. at 1859. The dispute here concerns only the third factor.
 
 
 22
 A Final Environmental Impact Statement may be supplemented at any time. See 23 C.F.R. § 771.130. Although NEPA does not expressly address "[t]he subject of postdecision supplemental environmental impact statements," Federal Highway regulations require a Supplemental Environmental Impact Statement only when (1) substantial changes are made in the proposed action that will introduce new or changed environmental effects of significance to the quality of the human environment, or (2) significant new information becomes available concerning the action's environmental aspects. See Marsh v. Oregon Natural Resources Council, 490 U.S. 360, 370, 109 S.Ct. 1851, 1857, 104 L.Ed.2d 377 (1989); 23 C.F.R. § 771.130. Accordingly, a Supplemental Environmental Impact Statement is not necessary "every time new information comes to light after the [Environmental Impact Statement] is finalized." Marsh, 490 U.S. at 373, 109 S.Ct. at 1859. "The new circumstance must present a seriously different picture of the environmental impact of the proposed project from what was previously envisioned." Sierra Club v. Froehlke, 816 F.2d 205, 210 (5th Cir.1987) (citation omitted) (emphasis added). Thus, the key to whether a Supplemental Environmental Impact Statement is necessary is not whether the area has undergone significant change, but whether the proposed roadwork will have a significant impact on the environment in a manner not previously evaluated and considered.
 
 
 23
 In Froehlke, the United States Court of Appeals for the Fifth Circuit examined language similar to the regulations at issue here, and concluded that the United States Army Corps of Engineersshould consider "the extent to which the new information presents a picture of the likely environmental consequences associated with the proposed action not envisioned by the original [Environmental Impact Statement]"....[T]he test is whether the new information so alters the project's character that a new "hard-look" at the environmental consequences is necessary.
 
 
 24
 Id. (quoting Wisconsin v. Weinberger, 745 F.2d 412, 418 (7th Cir.1984)). Similarly, in Marsh, the Supreme Court addressed the need for a Supplemental Environmental Impact Statement under NEPA when read in context with the Council on Environmental Equality and United States Army Corps regulations.[3] The Supreme Court found that the Council on Environmental Quality regulations "impose a duty on all federal agencies to prepare supplements to either draft or final [Environmental Impact Statement]'s [sic] if there 'are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts.' " Marsh, 490 U.S. at 372, 109 S.Ct. at 1858 (quoting 40 C.F.R. § 1502.9(c) (1987)).[4] Because the language of the statutes and regulations examined by the Supreme Court and the Fifth Circuit Court of Appeals is substantially similar to that at issue here, the reasoning employed by these courts applies equally here.
 
 
 25
 Like the Army Corps regulations in Froehlke, the Federal Highway Administration regulations do not require a Supplemental Environmental Impact Statement every time a change in the area occurs or a change in design is contemplated. To the contrary, an Environmental Impact Statement must be supplemented only when "the Administration determines that changes to the proposed action ... or new information or circumstances relevant to environmental concerns and bearing on the proposed action or its impacts would result in significant environmental impacts not evaluated in the [Environmental Impact Statement]." 23 C.F.R. § 771.130(a) (emphasis added). Importantly, Federal Highway Administration regulations comment that even if new information is "very important or interesting, and thus significant in one context," the information may "not be considered 'significant' so as to trigger preparation of a [Supplemental Environmental Impact Statement] because the information does not result in a significant change in the anticipated environmental impacts of the proposed action." 52 F.R. 32646, 32656 (1987). Additionally, Federal Highway Administration regulations specifically note that a Supplemental Environmental Impact Statement is not mandatory when the originally approved project is "downscaled or additional mitigation measures are incorporated" into the project. Id.; see also Township of Springfield, 702 F.2d at 436 (acknowledging that changes which " 'unquestionably mitigate adverse environmental effects of the project do not require a supplemental EIS.' ") (quoting Township of Springfield v. Lewis, No. Civ. A. 81-123, slip. op. at 7 (D.N.J. Aug. 31, 1981)). Bearing these rules in mind, we must determine whether the Federal Highway Administration's conclusion that a Supplemental Environmental Impact Statement is not required was unreasonable under the circumstances.
 
 
 26
 Before beginning construction on the Route 29 Riverfront Spur, the New Jersey Department of Transportation and the Federal Highway Administration prepared an Environmental Reevaluation as directed by 23 C.F.R. sections 771.129 and 771.130 to determine whether the Final Environmental Impact Statement approved in 1981 remained valid.[5] As the District Court noted, the Reevaluation included studies of the impacts of the proposed four-lane highway "cut and cover" design on: (1) vegetation and wildlife; (2) water quality and floodplain; (3) land use and aesthetics; (4) noise; (5) air quality; (6) hazardous and solid waste; (7) archeological resources; (8) historic architectural resources; (9) traffic trends; and (10) new environmental regulations, e.g., the ISTEA. See Dist. Ct. Mem. Op. at 11-12. In these studies, the Environmental Reevaluation analyzed both the impact on the environment and proposed mitigation. See id. at 12. After reviewing the results for the various studies conducted, the Federal Highway Administration concluded: (1) that the Route 29 Spur project would not result in any new significant environmental impacts not evaluated in the Final Environmental Impact Statement; and (2) that the environmental impacts of the proposed four-lane alternative were "substantially less than those impacts identified in the 1981 FEIS for the previously proposed six-lane alternative." Appellants' App. at 136.
 
 1. General Environmental Impact
 
 27
 First, it is clear from the record that the four-lane alternative, if anything, would mitigate any environmental impact associated with the originally approved six-lane highway design. A table included in the Environmental Reevaluation charts the differences between the originally approved six-lane highway and the proposed four-lane highway cut and cover design. This chart shows that the modified four-lane highway design would have reduced impact on water quality, floodplains, wetlands and aquatic habitat.[6] Appellants' App. at 138-39. The chart also shows that the four-lane design's impact on hazardous waste, cultural resources and displacements could be mitigated and would not result in a significant impact. Appellants' App. at 139. Finally, the chart shows that no changes in the impact on air, noise, natural ecosystems, wildlife habitat or historic properties will result from the proposed four-lane design.
 
 
 28
 The New Jersey Department of Transportation conducted extensive studies and reevaluations of the South Trenton Riverfront area and the potential impact of the proposed Riverfront Spur. After considering the findings of the studies and listening to concerns of South Trenton residents, the Administration determined that a Supplemental Environmental Impact Statement was not necessary. Ultimately, it concluded that a Supplemental Environmental Impact Statement was not required under the regulations because the roadway design change would not result in significant new impact on the environment, and would have a lesser effect on the environment than the originally approved plan.
 
 
 29
 The residents contend that finding a reasoned basis for the agency's decision results in "compensat[ing] for the agency's failings by substituting [our] own post hoc rationale" and that such conduct is prohibited. Appellant's Br. at 27 (citing SEC v. Chenery Corp., 332 U.S. 194, 196-97, 67 S.Ct. 1575, 1577-78, 91 L.Ed. 1995 (1947), and Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168-69, 83 S.Ct. 239, 245-46, 9 L.Ed.2d 207 (1962)). We disagree. It is clear from the record that the agency made its finding of no significant impact and its determination that a Supplemental Environmental Impact Statement was not required after conducting an Environmental Reevaluation and Traffic Study of the site for the proposed roadway. Thus, we are not accepting "appellate counsel's post hoc rationalizations for agency action." Burlington Truck Lines, 371 U.S. at 168, 83 S.Ct. at 246. Nor does this case present us with the task of either "guess[ing] at the theory underlying the agency's action" or "chisel[ing] that which must be precise from what the agency has left vague and indecisive." Chenery, 332 U.S. at 196-97, 67 S.Ct. at 1577-78. Moreover, we may uphold an agency's "decision of less than ideal clarity if the agency's path may reasonably be discerned." Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 286, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974). As explained, the extensive Reevaluation of the area provides adequate support for the Federal Highway Administration's finding of no significant impact and conclusion that a Supplemental Environmental Impact Statement was not necessary. Therefore, we will defer to the Federal Highway Administration's and United States Fisheries Service's conclusions and findings of No Significant Impact and hold that the decision not to draft a Supplemental Environmental Impact Statement was reasonable under the circumstances.
 
 2. Pedestrian and Traffic Safety
 
 30
 At oral argument, the South Trenton residents argued that the issues of pedestrian and traffic safety were not adequately addressed in the Final Alternatives Analysis prepared by the New Jersey Department of Transportation. The residents suggested that a proper assessment should consider other alternatives to the currently unsafe pedestrian and motorist conditions. We agree that "public safety is a factor that must be evaluated under NEPA." Appellants' Br. at 30; see Limerick Ecology Action, Inc. v. United States Nuclear Regulatory Comm'n, 869 F.2d 719, 725 (3d Cir.1989) (observing that NEPA requires an Environmental Impact Statement "for every major federal action 'significantly affecting the quality of the human environment' "). The argument is flawed, however, because changed safety conditions, alone, do not trigger the need for a Supplemental Environmental Impact Statement. The changes must be relevant to the project and result in significant environmental impact not evaluated in the Final Environmental Impact Statement completed in 1980. Thus, the proper test is whether the project will result in significant impact on the environment. See 23 C.F.R. § 771.130(a).
 
 
 31
 Further, despite the residents' contention to the contrary, the New Jersey Department of Transportation and Federal Highway Administration did consider pedestrian and motorist safety. The Executive Summary of the Final Alternatives Analysis acknowledges that "traffic congestion in Section 10C and 11B of Route 29 remains a severe problem" and that "[e]xisting conditions along Lamberton Road are currently unsafe for motorists and residents." Appellants' App. at 168, 170. The Final Alternatives Analysis also noted that "[t]he local residents have expressed a desire to return Lamberton Road to a local road and allow for improved pedestrian travel within the waterfront area." Appellants' App. at 171.
 
 
 32
 An agency is not required to consider and evaluate every conceivable alternative to the proposed roadway. When performing the Environmental Reevaluation, the New Jersey Department of Transportation analyzed the feasibility and impact of twelve alternative roadway designs. The proposed designs were evaluated with the following objectives in mind: (1) completing the missing link to the Trenton Complex roadway network, (2) "restor[ing] Lamberton Road to a neighborhood street," (3) providing "safe, easy and attractive access to the Trenton riverfront, (4) enhanc[ing] the riverfront recreation area, and (5) minimiz[ing] socioeconomic and environmental impact including fill in the Delaware River." Appellants' App. at 168.
 
 
 33
 The study concluded that the four-lane highway "cut and cover" design was the preferred alternative. When examining the preferred four-lane highway alternative, the study noted that "[t]he wide median at Cass Street facilitates pedestrian access to the Waterfront Park Complex by creating a refuge area in between the northbound and southbound roadways. Under this alternative, the intersections at Cass and Warren Streets are signalized." Appellants' App. at 180. The analysis also concluded that:
 
 
 34
 [t]his alternative would balance the benefits to the motoring public and to pedestrians seeking access to the Waterfront area. Four route 29 lanes would be provided to meet the capacity needs of the corridor, improving mainline traffic flows. Access ramps at Lalor Street and the Cass Street intersection would preserve the existing connections and thus the current travel patterns between these major east-west travel routes and route 29. Maintaining access to Lalor and Cass Streets would ensure that neither intersection or roadway is overburdened with more traffic volume or turning activity than it can efficiently accommodate. Lamberton Street traffic would decrease to levels more appropriate for a residential street. Safe pedestrian crossing would be provided with the two Route 29 roadways and the wide median configuration.
 
 
 35
 Appellants' App. at 180. The study and report therefore concluded that construction of the Riverfront Spur would alleviate many of the pedestrian and motor traffic problems currently resulting from the incomplete Trenton Complex. Although the South Trenton residents dispute this conclusion and strenuously argue that the preferred alternative will have a significant impact on pedestrian safety, they have failed to put forward any evidence, such as expert testimony or other data, to support their claim. Rather, the residents have simply cited facts such as the seating capacities of the sports stadium and nightclub as a basis for concluding that the new design would jeopardize pedestrian safety. In light of their failure to present any evidence establishing at least a possibility that the preferred design presents the problem they allege, we cannot conclude that the New Jersey Department of Transportation's Environmental Reevaluation is unreasonable.
 
 
 36
 B. Is the Route 29 Riverfront Spur Project Exempt from ISTEA?
 
 
 37
 The South Trenton residents also contend that the Route 29 Riverfront Spur is not exempt from the ISTEA requirements for a Congestion Management Study and a Major Investment Study.[7] To support this argument, they assert that the Environmental Reevaluation conducted in 1997 is a procedural step explicitly required by NEPA, and therefore, the environmental process for the Route 29 Riverfront Spur was not complete until the Environmental Reevaluation was conducted. We disagree.
 
 
 38
 The Route 29 Riverfront Spur is but one link in the entire Trenton Complex. Final approval for the entire project, including the Route 29 Riverfront Spur, was granted in 1981, approximately eleven years before the ISTEA statute came into effect, and well within the grandfathering clause of the statute.[8] The Environmental Reevaluation merely serves as a "check" on federal agencies. If time has lapsed since the preparation and approval of the Final Environmental Impact Statement and a specific stage of a complex project, the Reevaluation helps the agency decide whether any new significant environmental impacts require the preparation of a Supplemental Environmental Impact Statement, a study which may be prepared "at any time" during the life of a project. See 23 C.F.R. §§ 771.129, 771.130(a). This additional reassessment of the validity of the Final Environmental Impact Statement does not in turn mean that the NEPA process is incomplete. Indeed it is counterintuitive to hold that where a project's Final Environmental Impact Statement has been approved and significant portions of the construction have been completed, the project has not advanced beyond the NEPA required environmental process simply because a later study, the Environmental Reevaluation, was performed to determine whether any developments or changes in conditions attendant to the proposed site or project necessitate a Supplemental Environmental Impact Statement.
 
 
 39
 Little guidance is given us concerning what the "environmental process" under the ISTEA includes. It is undisputed that there is no statutory or regulatory definition of "environmental process." Nevertheless, we hold that the project had advanced beyond the environmental process when the Final Environmental Impact Statement was approved, and the proposed project began, before April 1992, even if construction extended beyond the effective date of the ISTEA statute and modifications have been made to the originally approved plan. This holding is consistent with relevant statutes and regulations. First, Federal Highway Administration regulations provide that "[a]fter the environmental process has been completed, the Administration is free to make a funding decision and proceed with construction of a project." 52 F.R. at 32655. Here, construction on the Trenton Complex and funding for the project began in 1981. Thus, it is axiomatic that the environmental process was complete as of that date. Second, 23 C.F.R. § 771.130 allows a Final Environmental Impact Statement to be supplemented "at any time." There is no provision limiting supplementation to the preconstruction period. Finally, we find regulations promulgated by the Council on Environmental Quality (CEQ) helpful. CEQ regulations provide that "[a]gencies shall integrate the NEPA process with other planning at the earliest possible time to insure [sic] that planning and decisions reflect environment values, to avoid delays later in the process, and to head off potential conflicts." 40 C.F.R. § 1501.2 (emphasis added). Thus, we conclude that under these facts and for the purposes of the grandfather clause of ISTEA, the environmental process is appropriately associated with the beginning stages of a project and stages leading to the funding of a project, not the last stage of construction. The Environmental Reevaluation, although part of the overall NEPA process, is not in turn incorporated into this initial stage of project planning. Accordingly, the Route 29 Riverfront Spur is exempted from the ISTEA requirements under that statute's grandfathering clause.
 
 III.
 
 40
 In 1997, the Federal Highway Administration conducted an extensive Environmental Reevaluation of the potential impact the Riverfront Spur would have on South Trenton's newly developed waterfront. In light of these studies, the Administration concluded that a supplemental Environmental Impact Statement was not required. We see no reason to conclude that the Federal Highway Administration's decision was unreasonable under the circumstances. Further, the Environmental Reevaluation serves as a check on government agencies and ensures that any significant environmental impacts that have arisen since initial approval of the project will be fully assessed. Therefore, the Trenton Complex, including the Riverfront Spur, are exempted from the ISTEA statute. Accordingly, we affirm.
 
 
 
 *
 The Honorable Richard W. Goldberg, Judge for the United States Court of International Trade, sitting by designation
 
 
 [1]
 23 C.F.R. § 771.129 states in pertinent part:
 Re-evaluations.
 (a) A written evaluation of the draft EIS shall be prepared by the applicant in cooperation with the Administration if an acceptable final EIS is not submitted to the Administration within 3 years from the date of the draft EIS circulation. The purpose of this evaluation is to determine whether or not a supplement to the draft EIS or a new draft EIS is needed.
 (b) A written evaluation of the final EIS will be required before further approvals may be granted if major steps to advance the action ... have not occurred within three years after the approval of the final EIS, final EIS supplement, or last major Administration approval or grant.
 (c) After approval of the EIS, FONSI or CE designation, the applicant shall consult with the Administration prior to requesting any major approvals or grants to establish whether or not the approved environmental document or CE designation remains valid for the requested Administrative action. These consultations will be documented when determined necessary by the Administration.
 
 
 [2]
 Although "[i]t is generally thought that the 'reasonableness' standard of review is 'far less deferential' to agency decisionmaking than is the 'arbitrary and capricious' standard ... the distinction between the two standards tends to blur. Even under the arguably 'lower' standard, agencies are not entitled to unbridled discretion in determining whether preparation of an [Environmental Impact Statement] is necessary." Township of Lower Alloways Creek, 687 F.2d at 742 n. 23; see also Marsh v. Oregon Natural Resources Council, 490 U.S. 360, 378, 109 S.Ct. 1851, 1861, 104 L.Ed.2d 377 (1989) ("In the context of reviewing a decision not to supplement an EIS, courts should not automatically defer to the agency's express reliance on an interest in finality without carefully reviewing the record and satisfying themselves that the agency has made a reasoned decision based on its evaluation of the significance--or lack of significance--of the new information."). Because the reasonableness standard is less deferential to the agency, it is axiomatic that a "reasonable" agency decision would also pass muster under the arbitrary and capricious analysis
 
 
 [3]
 "The Council on Environmental Quality issues general regulations for NEPA." Limerick Ecology Action, Inc. v. United States Nuclear Regulatory Comm'n, 869 F.2d 719, 725 (3d Cir.1989). Each federal agency then "issues its own implementing regulations." Id
 
 
 [4]
 40 C.F.R. § 1502.9 states in relevant part:
 (c) Agencies:
 (1) Shall prepare supplements to either draft or final environmental impact statements if:
 (i) The agency makes substantial changes in the proposed action that are relevant to environmental concerns; or
 (ii) there are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts.
 
 
 [5]
 23 C.F.R. § 771.130 states in pertinent part:
 Supplemental environmental impact statements.
 (a) A draft EIS, final EIS, or supplemental EIS may be supplemented at any time. An EIS shall be supplemented whenever the Administration determines that:
 (1) Changes to the proposed action would result in significant environmental impacts that were not evaluated in the EIS; or
 (2) New information or circumstances relevant to environmental concerns and bearing on the proposed action or its impacts would result in significant environmental impacts not evaluated in the EIS
 (b) However, a supplemental EIS will not be necessary where:
 (1) The changes to the proposed action, new information, or new circumstances result in a lessening of adverse environmental impacts evaluated in the EIS without causing other environmental impacts that are significant and were not evaluated in the EIS; or
 (2) The administration decides to approve an alternative fully evaluated in an approved final EIS but not identified as the preferred alternative ...
 (c) Where the Administration is uncertain of the significance of the new impacts, the applicant will develop appropriate environmental studies or, if the Administration deems appropriate, an EA to assess the impacts of the changes, new information, or new circumstances. If, based upon the studies, the Administration determines that a supplemental EIS is not necessary, the Administration shall so indicate in the project file.
 The Rules and Regulations of the Department of Transportation, Federal Highway Administration corresponding to 23 C.F.R. § 771.130 state in pertinent part:
 [Paragraph (b)(1) ] is intended to cover primarily the situation where a proposed action is downscaled or additional mitigation measures are incorporated in a project ... this section only applies where the change or new information does not cause any other impacts that are significant. If the change or new information results in impacts that were not evaluated, a supplemental EIS would be required if the new impacts are significant.
 
 
 [52]
 F.R. 32646, 32656 (1987)
 
 
 [6]
 As an example of the detail with which the New Jersey Department of Transportation studied any potential environmental impacts of the redesigned Riverfront Spur, the Department even considered the impact on fish in the Delaware River. After collecting and analyzing data, the U.S. National Marine Fisheries Service concluded that the Route 29 Riverfront Spur project will not result in any significant changes to the existence, spawning and feeding of the shortnose sturgeon. Id. at 91. When analyzing technical documents, studies and other relevant scientific information we "defer to 'the informed discretion of the responsible federal agencies.' " Marsh, 490 U.S. at 377, 109 S.Ct. at 1861 (quoting Kleppe v. Sierra Club, 427 U.S. 390, 412, 96 S.Ct. 2718, 2731, 49 L.Ed.2d 576 (1976))
 
 
 [7]
 The ISTEA statute states in relevant part:
 Metropolitan transportation planning process: Major metropolitan transportation investments.
 (a) Where the need for a major metropolitan transportation investment is identified, and Federal Funds are potentially involved, major investment (corridor or subarea) studies shall be undertaken to develop or refine the plan and lead to decisions by the MPO, in cooperation with participating agencies, on the design concept and scope of the investment.
 
 
 [23]
 C.F.R. § 450.318
 
 
 [8]
 23 C.F.R. § 550.318(f)(2)(i) provides that:
 Where the environmental process has been completed and a Record of Decision or finding of No Significant Impact has been signed, § 450.318 does not apply. Where the environmental process has been initiated but not completed, the FHWA and the FTA shall be consulted on appropriate modifications to meet the requirements of this section.
 Additionally, 23 C.F.R. § 450.336 states in pertinent part:
 Phase-in of new requirements.
 (b)(5) Projects advanced beyond the NEPA process as of April 6, 1992 and which are being implemented ... will be deemed to be programmed and not subject to this requirement.